No. 24-1216
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
_____

## JUSTYNA JENSEN,

*Plaintiff-Appellant*,

**v.**

## MARYLAND CANNABIS ADMINISTRATION AND WILLIAM TILBURG,

*Defendants-Appellees.*
_____

On Appeal from the United States District Court for the District of Maryland
(Brendan A. Hurson, District Judge)
_____

## BRIEF OF APPELLEES
_____

ANTHONY G. BROWN
Attorney General of Maryland

HEATHER B. NELSON
JAMES N. TANSEY
Assistant Attorneys General
300 West Preston Street
Suite 302
Baltimore, Maryland 21201
heather.nelson1@maryland.gov
jamie.tansey@maryland.gov
(410) 862-4692
(410) 333-7894 (facsimile)

JOSHUA R. CHAZEN
Assistant Attorney General
200 Saint Paul Place
20th Floor
Baltimore, Maryland 21202
jchazen@oag.state.md.us
(410) 576-7058
(410) 576-6995 (facsimile)

June 13, 2024                    Attorneys for Appellees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1216__    Caption: __Jensen v. Maryland Cannabis Administation et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Maryland Cannabis Administration__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                          ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                           ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?           ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ James N. Tansey                     Date:          3/26/24

Counsel for: Maryland Cannabis Administration

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>24-1216</u>      Caption: <u>Jensen v. Maryland Cannabis Administration et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>William Tilburg</u>
(name of party/amicus)

_____

 who is _____<u>Appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:


3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ James Tansey                     Date: 3/26/2024

Counsel for: William Tilburg

Print to PDF for Filing

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ..........................................................................1

ISSUE PRESENTED FOR REVIEW ....................................................................2

STATEMENT OF THE CASE ...............................................................................2

> The Maryland General Assembly Becomes Statutorily Obligated to Establish a Regulatory Framework in Statute for Adult-Use Cannabis ..............................................................................................2

> Criteria for Issuance of Adult-Use Cannabis Licenses ...................................3

> Maryland Publishes Guidance on Social Equity Applicant Verification and the Verification Application Portal Opens ......................................5

> Ms. Jensen Seeks Verification but Fails to Apply for a Cannabis License.............................................................................................6

> Proceedings Below .........................................................................................7

SUMMARY OF ARGUMENT..............................................................................10

ARGUMENT .......................................................................................................11

I. THE STANDARD OF REVIEW IS ABUSE OF DISCRETION. ...................................11

II. THE DISTRICT COURT CORRECTLY CONCLUDED THAT MS. JENSEN FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS. ........12

> A. The Dormant Commerce Clause Does Not Apply to Maryland's Adult-Use Cannabis Retail License Application Process. ..................13

> B. Maryland's Recreational Cannabis Licensing Regime Differs from the Medical Cannabis Licensing Scheme Addressed by the First Circuit............................................................................................15

> C. The District Court's Decision Is Consistent with On-Point Decisions of Other Federal Courts. ....................................................18

D.    Alternatively, the Challenged Criterion Does Not Violate the Dormant Commerce Clause Because It Places No Restriction on the Applicant's State of Residence. ....................................................21

III.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CONCLUDING THAT THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGHED AGAINST GRANTING A PRELIMINARY INJUNCTION. .......................................22

A.    The District Court Did Not Abuse Its Discretion in Determining That Ms. Jensen's Delay in Bringing Suit Weighed Against Injunctive Relief. ..................................................................................23

B.    Additional Considerations Underscore the Inappropriateness of Granting One Applicant an Injunction That Would Halt Licensing for Hundreds of Others. ......................................................24

CONCLUSION ................................................................................................26

REQUEST FOR ORAL ARGUMENT .................................................................28

CERTIFICATE OF COMPLIANCE ....................................................................28

TEXT OF PERTINENT PROVISIONS ...............................................................29

Page

**Cases**

*B-21 Wines, Inc. v. Bauer*, 36 F.4th 214 (4th Cir. 2022) ..........................13

*Brinkmeyer v. Washington State Liquor & Cannabis Bd.*, No. C20-5661
 BHS, 2023 WL 1798173 (W.D. Wash. Feb. 7, 2023),.............................. 18, 20

*Brown v. Hovatter*, 561 F.3d 357 (4th Cir. 2009)....................................14

*Centro Tepeyac v. Montgomery County*, 722 F.3d 184 (4th Cir. 2013)..................12

*Environmental Tech. Council v. Sierra Club*, 98 F.3d 774 (4th Cir. 1996) ............13

*Finch v. Treto*, 82 F.4th 572 (7th Cir. 2023) ............................................. 18, 20, 24

*Fulton Corp. v. Faulkner*, 516 U.S. 325 (1996) ........................................13

*Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019) ......................................11

*Gonzales v. Raich*, 545 U.S. 1 (2005).......................................................16

*Granholm v. Heald*, 544 U.S. 460 (2005)..................................................14

*Mahmoud v. McKnight*, 102 F.4th 191 (4th Cir. 2024) .................................... 11, 12

*McBurney v. Young*, 667 F.3d 454 (4th Cir. 2012)......................................... 13, 14

*National Pork Producers Council v. Ross*, 598 U.S. 356 (2023) ...........................13

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................22

*Northeast Patients Grp. v. United Cannabis Patients & Caregivers
 of Maine*, 45 F.4th 542 (1st Cir. 2022) ......................................... 15, 16, 17, 18

*Original Invs., LLC v. Oklahoma*, 542 F. Supp. 3d 1230
 (W.D. Okla. 2021) ................................................................... 9, 15, 19

*Peridot Tree WA Inc. v. Washington State Liquor & Cannabis Control
 Bd.*, No. 3:23-cv-06111-TMC, 2024 WL 69733 (W.D. Wash.
 Jan. 5, 2024)........................................................................ 16, 19, 20

*Perry v. Judd*, 471 Fed. Appx. 219 (4th Cir. 2012) ................................23

*Pierce v. North Carolina State Bd. of Elections*, 97 F.4th 194
    (4th Cir. 2024) .......................................................................................12

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ....................................14

*Roe v. Department of Def.*, 947 F.3d 207 (4th Cir. 2020) ............... 11, 22

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019) ..........13

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*,
    550 U.S. 330 (2007) ..............................................................................14

*United States v. Dozier*, 848 F.3d 180 (4th Cir. 2017) .............................21

*United States v. Heyward*, 42 F.4th 460 (4th Cir. 2022) ..........................17

*United States v. Nicholson*, 676 F.3d 376 (4th Cir. 2012) .......................12

*Variscite NY Four, LLC v. New York State Cannabis Control Bd.*,
    No. 1:23-cv-01599, 2024 WL 406490 (N.D.N.Y. Feb. 2, 2024) ......... 15, 19, 23

*Vitkus v. Blinken*, 79 F.4th 352 (2023) ....................................................11

*Wall v. Rasnick*, 42 F.4th 214 (4th Cir. 2022) ........................................12

## Constitutional Provisions

Md. Const. art. XX, § 1 .........................................................................2, 25

U.S. Const. art. I, § 8, cl. 3 .......................................................................13

## Statutes

21 C.F.R. § 1308.11(d) .............................................................................15

21 U.S.C. § 801 .........................................................................................15

28 U.S.C. § 1292(a)(1) ................................................................................2

28 U.S.C. § 1331 .........................................................................................1

28 U.S.C. § 2201 .........................................................................................7

42 U.S.C. § 1983 ...................................................................................7

Md. Code Ann., Alc. Bev. § 1-309.1(d) (LexisNexis Supp. 2023) ...........................3

Md. Code Ann., Alc. Bev. § 1-322(a)(2) (LexisNexis Supp. 2023)..........................3

Md. Code Ann., Alc. Bev. § 36-101 (LexisNexis Supp. 2023)....................... 1, 2, 3

Md. Code Ann., Alc. Bev. § 36-101(ff) (LexisNexis Supp. 2023) ........ 3, 4, 5, 6, 12

Md. Code Ann., Alc. Bev. § 36-101(ff)(1)(iii) (LexisNexis Supp. 2023)...............22

Md. Code Ann., Alc. Bev. § 36-101(r) (LexisNexis Supp. 2023).........................3, 4

Md. Code Ann., Alc. Bev. § 36-401(c) (LexisNexis Supp. 2023) ...........................3

Md. Code Ann., Alc. Bev. § 36-404 (LexisNexis Supp. 2023)................................5

Md. Code Ann., Alc. Bev. § 36-404(a)(2) (LexisNexis Supp. 2023).......................5

Md. Code Ann., Alc. Bev. § 36-404(d) (LexisNexis Supp. 2023) .......................3, 5

Md. Code Ann., Alc. Bev. § 36-404(d)(3)(i) (LexisNexis Supp. 2023)...................4

Md. Code Ann., Alc. Bev. § 36-404(f)-(h) (LexisNexis Supp. 2023).......................5

Md. Code Ann., Alc. Bev. §§ 36-101 – 36-1507 (LexisNexis Supp. 2023) ............2

**Regulations**

COMAR 14.17.01.01(B)(45) ....................................................................4

No. 24-1216

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**JUSTYNA JENSEN,**

*Plaintiff-Appellant*,

v.

**MARYLAND CANNABIS ADMINISTRATION AND WILLIAM TILBURG,**

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Maryland
(Brendan A. Hurson, District Judge)

_____

**BRIEF OF APPELLEES**

_____

**JURISDICTIONAL STATEMENT**

Plaintiff Justyna Jensen filed a two-count complaint seeking injunctive relief and a declaratory judgment against a portion of Maryland's Cannabis Reform Act, codified at §§ 36-101 – 36-1507 of the Alcoholic Beverages & Cannabis Article. The district court had jurisdiction under 28 U.S.C. § 1331 because the complaint raised federal constitutional claims.

On February 27, 2024, the district court denied Ms. Jensen's motion for temporary restraining order and preliminary injunction. (J.A. 211-236; J.A. 237.) Ms. Jensen filed a notice of appeal on March 9, 2024. (J.A. 238.) This Court has jurisdiction to review the district court's order under 28 U.S.C. § 1292(a)(1).

## ISSUE PRESENTED FOR REVIEW

Did the district court correctly deny Ms. Jensen's motion for preliminary injunction because (1) she did not demonstrate that she is likely to succeed on the merits of her claim; and (2) the balance of equities and public interest weighed against granting the motion?

## STATEMENT OF THE CASE

### The Maryland General Assembly Becomes Statutorily Obligated to Establish a Regulatory Framework in Statute for Adult-Use Cannabis

Maryland voters added Article XX to the Maryland Constitution in elections held in 2022. Article XX enshrines the right of an individual who is at least 21 years old to use and possess cannabis, then directs the Maryland General Assembly to establish a regulatory framework that created a safe and effective cannabis program in Maryland. Md. Const. art. XX, § 1. So directed, the General Assembly passed, and the Governor signed into law, the Cannabis Reform Act ("the Act"). *See* Alc. Bev. §§ 36-101 – 36-1507 (LexisNexis Supp. 2023).

**Criteria for Issuance of Adult-Use Cannabis Licenses**

The Act establishes a program through which individuals may access regulated cannabis products through licensed cannabis businesses. *Id.* § 36-401(c). The Act further contemplates using the economic opportunities available through the cannabis licensing program to help redress the harms disproportionately inflicted on Maryland communities by cannabis prohibition. *Id.* §§ 1-309.1(d), 1-322(a)(2), 36-101(r), 36-101(ff), 36-404(d). Part of the Act addresses the criteria used by the Maryland Cannabis Administration ("the Administration") when it issued the first round of licenses to eligible recipients. *Id.* § 36-101. The General Assembly developed these criteria through its Cannabis Legalization Workgroup, which received, among other information, an Adult-Use Cannabis Social Equity Tool Kit from a public health expert. (J.A. 116-117, J.A. 123-176.) The Tool Kit surveyed legal policies by the nineteen states that had created licensed cannabis markets before Maryland. (J.A. 123.) It also summarized how other states' cannabis programs address social equity. (J.A. 129-131.) Among the 15 states that have social equity considerations in their cannabis programs, 14 employ a criterion requiring that a licensee be from a "disproportionately impacted community," which states define based on metrics such as rates of arrest and conviction, unemployment, poverty, and receipt of government benefits. (J.A. 129.)

Accordingly, the General Assembly adopted three alternate criteria for qualifying as a "[s]ocial equity applicant." Under the Act, a social equity applicant is an applicant that:

> (1) has at least 65% ownership and control held by one or more individuals who:
>
> > (i) have lived in a disproportionately impacted area for at least 5 of the 10 years immediately preceding the submission of the application;
> >
> > (ii) attended a public school in a disproportionately impacted area for at least 5 years; or
> >
> > (iii) for at least 2 years, attended a 4-year institution of higher education in the State where at least 40% of the individuals who attend the institution of higher education are eligible for a Pell Grant; or
>
> (2) meets any other criteria established by the Administration.

Alc. Bev. § 36-101(ff). The Act defines "disproportionately impacted area" as "a geographic area identified by the Office of Social Equity that has had above 150% of the State's 10-year average for cannabis possession charges." *Id.* § 36-101(r). The Administration did not establish any other licensing criteria. *See* COMAR 14.17.01.01B(45) (regulatory definition of "Social equity applicant" is identical to statutory definition).

These social equity applicant criteria are directly related to the disproportionate impact of arrests for cannabis possession on certain communities. *See* Alc. Bev. § 36-101(r); *id.* § 36-404(d)(3)(i). They also are related to the State's

interest in creating economic opportunities for people who attended schools that serve a significant population of students who are eligible for government benefits. (J.A. 307.)

The Act imposes a statutory limit on the number of business licenses available, so the Administration awards those licenses in specific licensing rounds rather than accepting applications on a rolling basis. *See* Alc. Bev. § 36-404. A person who does not qualify as a social equity applicant may still apply for a cannabis license in the first round; however, that person may not hold more than 35% of the ownership interest in the applicant entity. *See id.* §§ 36-101(ff), 36-404(d). The Administration will not award all available cannabis licenses in the first round; there will be subsequent licensing rounds, which may employ different criteria. *See id.* § 36-404(a)(2), (f)-(h).

### Maryland Publishes Guidance on Social Equity Applicant Verification and the Verification Application Portal Opens

On September 1, 2023, the Administration published guidance for applicants to verify their eligibility as social equity applicants, instructing them to do so with Creative Services, Inc. ("Creative Services"), a background screening and security consulting firm. (J.A. 118, J.A. 180-192.) Each applicant received a report with a unique verification number to include in her application. (J.A. 117.) On September 7, 2023, the Administration opened the social equity applicant verification portal, which remained open until November 7. (J.A. 118.) On November 13, the

Administration opened the application portal, which remained open until 5:00 p.m. on December 12, 2023.  (J.A. 118.)

### Ms. Jensen Seeks Verification but Fails to Apply for a Cannabis License

Ms. Jensen reportedly learned of Maryland's cannabis license application, including the social equity applicant criteria, in September 2023.  (J.A. 209-210.) On November 6, 2023, she submitted a request to verify her status as a social equity applicant, specifically pursuant to the criterion requiring an applicant to have attended, for at least 2 years, a 4-year institution of higher education in the State where at least 40% of the individuals who attend the institution are eligible for Pell Grants.  (J.A. 118); *see also* Alc. Bev. § 36-101(ff).  In support of her request, Ms. Jensen submitted a transcript indicating that she attended California State University-Long Beach, despite that school being outside Maryland and not on the list of eligible higher education institutions.  (J.A. 119, J.A. 186.)

Shortly thereafter, Creative Services spoke with Ms. Jensen and determined that she had not provided sufficient information to proceed with social equity applicant verification.  (J.A. 119.)  On November 29, 2023, while the application portal was open, the Administration sent Ms. Jensen a letter informing her that Creative Services could not verify that she met the eligibility criteria.  (J.A. 208.) The letter instructed Ms. Jensen that if she did not resolve the barriers to verification, she would "be unable to be associated with an application that would provide [her]

with any more than 35% ownership share in a prospective business."  (J.A. 208.)

After the application portal closed, on December 13, 2023, the Administration sent

Ms. Jensen a letter informing her that Creative Services "was unable to verify that

you meet the eligibility in any one of the . . . criteria."  (J.A. 82.)

Ms. Jensen did not apply for a cannabis license from the Administration.  (J.A.

120.)   Nor  did  any  applicant  list  Ms.  Jensen  on  any  application  that  the

Administration received.  (J.A. 120.)

**Proceedings Below**

On January 26, 2024, Ms. Jensen filed this lawsuit, naming as defendants the

Administration and its Executive Director (collectively, "the State").  (J.A. 11-18.)

This was 147 days after the Administration published the list of qualifying Pell Grant

criterion schools (September 1, 2023), 77 days after Creative Services contacted Ms.

Jensen (November 10, 2023), 58 days after the Administration mailed its first letter

to Ms. Jensen (November 29, 2023), 45 days after the cannabis license application

period ended (December 12, 2023), and 44 days after the Administration mailed its

second letter to Ms. Jensen (December 13, 2023).  Ms. Jensen asserted two counts

against the State, seeking injunctive and declaratory relief for alleged violations of

the dormant Commerce Clause under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  (J.A.

15-16.)

Ms. Jensen waited another two weeks, until February 6, to file a motion for temporary restraining order and preliminary injunction. (J.A. 18-20.) Ms. Jensen argued that she was likely to succeed on the merits because Maryland's cannabis licensing application program discriminated against interstate commerce in that the Pell Grant criterion was an unconstitutional residency preference. (ECF No. 19-15.) Ms. Jensen also argued that, absent an injunction, she would suffer irreparable harm in the form of a constitutional violation and exclusion from the recreational cannabis market. (ECF No. 19-15, at 15-17.) These same reasons formed the primary basis for Ms. Jensen's argument that the balance of the equities and public interest factors favored injunctive relief. (ECF No. 19-15, at 17-18.)

In opposition, the State argued that Ms. Jensen lacked standing because her alleged injury was not redressable, and that laches barred her request due to her unreasonable delay in bringing her challenge. (ECF No. 25-1, at 9-14.) The State further argued that Ms. Jensen could not establish a likelihood of success on the merits of her claim because the dormant Commerce Clause does not apply to state cannabis licensing. (ECF No. 25-1, at 15-19.) In the alternative, the State argued that even if the dormant Commerce Clause applied to state cannabis licensing, the Pell Grant criterion did not establish a residency requirement, in that an alumnus of an eligible school could qualify as a social equity applicant despite currently residing outside Maryland; thus, the criterion would have, at most, a de minimis effect on

interstate commerce. (ECF No. 25-1, at 19-23.) The State also argued that Ms. Jensen would not suffer irreparable harm, and the equities balanced against injunctive relief, because licenses would remain available after the first round of licensing and Ms. Jensen's delay undermined her claims. (ECF No. 25-1, at 23-28.)

On February 27, 2024, the court denied Ms. Jensen's motion for injunctive relief, as well as an oral motion for an injunction pending appeal. (J.A. 211-237.) The court first found that Ms. Jensen had standing (J.A. 216), and that she satisfied the irreparable harm requirement because a violation of constitutional rights would constitute irreparable harm (J.A. 222).

The court also found, however, that the balance of equities and the public interest weighed against injunctive relief because Ms. Jensen had waited almost two months after submitting her application, and four months after becoming aware of Maryland's cannabis licensing process, before seeking an injunction. (J.A. 224.) The court also found persuasive the Western District of Oklahoma's reasoning "that it is not the place of a federal court to facilitate federally prohibited activity." (J.A. 225 (citing *Original Invs., LLC v. Oklahoma*, 542 F. Supp. 3d 1230, 1234-35 (W.D. Okla. 2021)).)

Finally, the court held that Ms. Jensen had failed to demonstrate a likelihood of success on the merits. Because any interstate market in cannabis is illegal at the federal level, the court reasoned, the dormant Commerce Clause does not apply to

the recreational cannabis industry.  (J.A. 230-34.)  The court explained that "it defies common sense to find that the dormant Commerce Clause, drawn from Congress' power to regulate interstate commerce, prevents the states from passing laws which inhibit a market which Congress has already declared prohibited."  (J.A. 231.)  The court elaborated that the Rohrabacher-Farr Amendment, on which the First Circuit relied in finding that the dormant Commerce Clause applies to the *medical* cannabis market, has no applicability to this case, which involves the *recreational* cannabis market.  (J.A. 230.)  In view of its holding that the dormant Commerce Clause did not apply at all, the court deemed it unnecessary to analyze whether the challenged provision was discriminatory.  (J.A. 234.)

This appeal followed.

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in denying the preliminary injunction.  First, the court was correct to conclude that Ms. Jensen was unlikely to succeed on the merits.  Ms. Jensen claims that the Pell Grant provision and its implementing regulations unconstitutionally discriminate against out-of-state residents under the dormant Commerce Clause, but an interstate market in recreational cannabis is illegal as a matter of federal law.  The dormant Commerce Clause, whose purpose is to prevent states from interfering with interstate commerce, therefore does not apply to state regulation of recreational cannabis.

Further, even if the dormant Commerce Clause does apply, the Pell Grant provision is unproblematic because it does not favor residents of Maryland.

Second, the district court did not abuse its discretion in determining that the balance of equities and public interest did not favor injunctive relief. As the district court explained, Ms. Jensen's lengthy delay in bringing suit, while the Administration expended time and money processing other applications, weighed heavily against an injunction. Further, an injunction would have flouted the will of Maryland voters, would have delayed implementation of a regulatory program meant to ensure the safety of the recreational cannabis industry, and would have prejudiced more than 1,700 applicants who had expended their own time and money in the license application process.

## ARGUMENT

### I. THE STANDARD OF REVIEW IS ABUSE OF DISCRETION.

This Court reviews a decision to deny a preliminary injunction for abuse of discretion, *Roe v. Department of Def.*, 947 F.3d 207, 219 (4th Cir. 2020), and, as part of that review, assesses the lower court's legal conclusions de novo, *Vitkus v. Blinken*, 79 F.4th 352, 361-62 (2023). "[A] district court abuses its discretion 'when it misapprehends the law with respect to the underlying issues in litigation.'" *Mahmoud v. McKnight*, 102 F.4th 191, 203 (4th Cir. 2024) (quoting *Vitkus*, 79 F.4th at 362); *see also Centro Tepeyac v. Montgomery County*, 722 F.3d 184, 188 (4th Cir.

2013).  "[M]ere disagreement with the district court," however, does not warrant reversal.  *Mahmoud*, 102 F.4th at 203 (quoting *Pierce v. North Carolina State Bd. of Elections*, 97 F.4th 194, 210 (4th Cir. 2024)).  Rather, "[a] district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relief on erroneous factual or legal premises."  *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022) (quoting *United States v. Nicholson*, 676 F.3d 376, 383 (4th Cir. 2012)).

## II. THE DISTRICT COURT CORRECTLY CONCLUDED THAT MS. JENSEN FAILED TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

Maryland issued the first round of adult-use cannabis retail licenses to applicants who met at least one of three criteria.  Alc. Bev. § 36-101(ff).  Ms. Jensen challenges only the third of those criteria, which requires that an applicant attended, for at least two years, a four-year institution of higher education in Maryland where at least 40% of the individuals who attend are eligible for Pell Grants.

The district court was correct to conclude that Ms. Jensen failed to demonstrate that she was likely to succeed on the merits.  First, as the court concluded, the interstate recreational cannabis market is illegal as a matter of federal law, so the dormant Commerce Clause does not apply.  Second, and alternatively, the Pell Grant criterion places no restriction on the applicant's state of residence and thus does not give residents of any state an advantage.

**A.    The Dormant Commerce Clause Does Not Apply to Maryland's Adult-Use Cannabis Retail License Application Process.**

The Commerce Clause provides that "[t]he Congress shall have the Power . . . [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3.  The Supreme Court has recognized, however, that the Commerce Clause "also prohibits state laws that unduly restrict interstate commerce." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 514 (2019).  This is the negative, or dormant, aspect of the Commerce Clause, which prohibits states from "adopting protectionist measures and thus preserves a national market for goods and services." *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214, 221 (4th Cir. 2022) (quoting *Tennessee Wine and Spirits*, 588 U.S. at 514).

The dormant Commerce Clause prevents states from adopting certain measures that restrict interstate commerce or encroach upon Congress's power to regulate interstate commerce. *See National Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023); *Fulton Corp. v. Faulkner*, 516 U.S. 325, 330-31 (1996).  Thus, the dormant Commerce Clause requires stringent review of a state law that "discriminates facially, in its practical effect, or in its purpose" against interstate commerce.  *McBurney v. Young*, 667 F.3d 454, 468 (4th Cir. 2012) (quoting *Environmental Tech. Council v. Sierra Club*, 98 F.3d 774, 785 (4th Cir. 1996)).  This

form of discrimination means "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *McBurney*, 667 F.3d at 468 (quoting *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007)). On that score, the Supreme Court has explained that a state "may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses." *Granholm v. Heald*, 544 U.S. 460, 472 (2005). "Unless discrimination is demonstrably justified by a factor unrelated to economic protectionism, a 'discriminatory law is virtually *per se* invalid.'" *McBurney*, 667 F.3d at 468 (quoting *Brown v. Hovatter*, 561 F.3d 357, 363 (4th Cir. 2009)).[1]

Here, Ms. Jensen argues that the Act violates the dormant Commerce Clause by favoring Maryland residents over nonresidents in the adult-use cannabis license application program—specifically, "in investing in the ownership of a state-licensed cannabis business." Appellant's Br. 7 (emphasis omitted). The dormant Commerce Clause, however, does not apply to state cannabis business licenses. As a matter of federal law, the Controlled Substances Act prohibits the sale or distribution of

---

[1] Under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), a nondiscriminatory state law may nonetheless violate the dormant Commerce Clause if it unjustifiably burdens the interstate flow of commerce. *McBurney*, 667 F.3d at 468. Ms. Jensen does not argue that the Pell Grant criterion is illegal under the *Pike* standard, choosing to argue instead only that the criterion is discriminatory.

cannabis. 21 U.S.C. § 801 *et seq.*; 21 C.F.R. § 1308.11(d). Thus, there is no legal national cannabis market with which a state law might interfere. Without such a market, the dormant Commerce Clause cannot apply to Maryland's licensing application scheme. *See Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, No. 1:23-cv-01599, 2024 WL 406490, at \*12 (N.D.N.Y. Feb. 2, 2024), *appeal docketed*, No. 24-384 (2d Cir. Feb. 15, 2024); *Original Invs.*, 542 F. Supp. 3d at 1233. Indeed, as the district court observed, it would make little sense to hold that the dormant Commerce Clause, a negative implication of congressional power to regulate interstate commerce, restricts state interference with an interstate market that is federally prohibited.

**B.      Maryland's Recreational Cannabis Licensing Regime Differs from the Medical Cannabis Licensing Scheme Addressed by the First Circuit.**

Prior to the district court's decision, no court in the Fourth Circuit had addressed whether the dormant Commerce Clause applies to the recreational cannabis industry. In urging reversal, Ms. Jensen relies principally on the First Circuit's decision in *Northeast Patients Group v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2022). In that case, the First Circuit held that the Maine Medical Marijuana Act's residency requirement violated the dormant Commerce Clause. *Id.* at 544. The defendants argued that because cannabis was federally illegal, there could be no lawful interstate market. *Id.* at 547. But the First

Circuit rejected this argument because there indeed was an interstate market for cannabis, regardless of whether it was legal. *Id.*; *see also Gonzales v. Raich*, 545 U.S. 1, 18-19 (2005) (acknowledging the existence of an interstate cannabis market and upholding Congress's authority to prohibit the possession, cultivation, and use of cannabis in a purely intrastate manner in a state where medical cannabis was legal).

*Northeast Patients Group* is fully distinguishable because it involved medical cannabis rather than recreational cannabis. The First Circuit majority relied heavily on Congress's enactment of the Rohrabacher-Farr Amendment, which "contemplates both that an interstate market in medical marijuana may exist that is free from federal criminal enforcement and that, if so, this interstate market may be subject to state regulation." *Northeast Patients Group*, 45 F.4th at 549.[2] But Congress has passed no analogous provision related to recreational cannabis. That is the key distinction between this case (a challenge to one component of a recreational cannabis licensing scheme), and *Northeast Patients Group* (a challenge to a medical cannabis licensing residency requirement). Because this case is

_____

[2] The Rohrabacher-Farr Amendment, signed into law in December 2014 as an appropriations rider, and included in appropriations bills up to the present, prohibits the use of federal funds to oppose state medical cannabis programs. *See Peridot Tree WA Inc. v. Washington State Liquor & Cannabis Control Bd.*, No. 3:23-cv-06111-TMC, 2024 WL 69733, at *8 (W.D. Wash. Jan. 5, 2024), *appeal docketed*, No. 24-209 (9th Cir. Jan. 12, 2024).

fundamentally different from *Northeast Patients Group*, Ms. Jensen's argument that "[f]ederal circuit courts should avoid creating circuit splits," Appellant's Br. 23, is beside the point, as affirming the denial of Ms. Jensen's motion for preliminary injunction would not create a circuit split at all.[3]

Statements by the current United States Attorney General at a congressional hearing do not undermine the distinction between medical and recreational cannabis programs. Appellant's Br. 28-31. As the district court explained, non-binding sentiments expressed at a congressional hearing do not stand on the same footing as legislation (such as that containing the Rohrabacher-Farr Amendment) passed by Congress and signed into law by the President. (J.A. 230-231.) Notwithstanding Ms. Jensen's argument that the district court "gave insufficient weight" to the Attorney General's statements, the court in fact took due account of Department of Justice policy steering away from cannabis-related prosecutions, considered it in light of the First Circuit's decision, and properly determined that the dormant Commerce Clause does not apply to recreational cannabis.

---

[3] Ms. Jensen, moreover, relies on the *dissenting* opinion in *United States v. Heyward*, 42 F.4th 460 (4th Cir. 2022), without noting as much. But even that opinion states only that "federal circuit courts of appeal avoid creating circuit splits without a 'strong' or 'compelling' reason for doing so." *Heyward*, 42 F.4th at 482 (Agee, J., dissenting) (internal citation omitted). The important distinction between this case and *Northeast Patients Group* is, at a minimum, a strong or compelling reason for this Court to reach a different result here.

**C.    The District Court's Decision Is Consistent with On-Point Decisions of Other Federal Courts.**

Ms. Jensen cites no case concluding that the dormant Commerce Clause applies to the recreational cannabis market after explicitly considering the impact of cannabis's federal illegality.  Instead, she relies on decisions that address distinguishable programs or do not consider that impact at all.  *See, e.g., Northeast Patients Grp.*, 45 F.4th at 544 (affirming permanent injunction against a Maine law that required all officers or directors of a medical cannabis dispensary to be residents of Maine); *Finch v. Treto*, 82 F.4th 572 (7th Cir. 2023) (expressly declining to address whether the dormant Commerce Clause applies to Illinois' cannabis licensing laws).  Meanwhile, dormant Commerce Clause decisions of other federal courts support the distinction between medical and recreational cannabis and thus confirm that the district court reached the correct result here.

For example, the United States District Court for the Western District of Washington held that the dormant Commerce Clause did not apply to Washington's six-month residency requirement for recreational cannabis licenses.  *Brinkmeyer v. Washington State Liquor & Cannabis Bd.*, No. C20-5661 BHS, 2023 WL 1798173, at *11 (W.D. Wash. Feb. 7, 2023), *appeal dismissed*, No. 23-35162 (9th Cir. Apr. 11, 2023).  That court found it inconceivable that the dormant Commerce Clause could protect illegal interstate commerce.  *See id.* ("It is not clear to this Court how the dormant Commerce Clause can be read to protect *illegal* interstate commerce.

18

The Supremacy Clause, preemption, general principles of federalism, and common sense suggest it does not.") (emphasis in original).

The next year, the same court denied a motion for preliminary injunction challenging Washington's Social Equity Program's award of retail cannabis licenses in a manner aimed at helping applicants most adversely impacted by drug prohibition laws. *Peridot Tree WA Inc.*, 2024 WL 69733, at *1. The court concluded that the plaintiff was "unlikely to succeed on the merits because the dormant Commerce Clause does not protect a right to participate in an interstate market that Congress has declared illegal." *Id.* "[T]he dormant Commerce Clause," the court stressed, "does not apply to federally illegal markets." *Id.* at *9.[4] Other decisions follow this same logic. *See Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, No. 1:23-cv-01599, 2024 WL 406490 (N.D.N.Y. Feb. 2, 2024), *appeal docketed*, No. 24-384 (2d Cir. Feb. 15, 2024); *Original Invs.*, 542 F. Supp. 3d at 1233 (refusing to apply the dormant Commerce Clause to enjoin residency requirements because interstate commerce in cannabis would violate the Controlled Substances Act).

In *Variscite NY Four*, the United States District Court for the Northern District of New York denied a motion for a temporary restraining order and preliminary injunction in a dormant Commerce Clause challenge to the provision of New York's

---

[4] Ms. Jensen's brief provides no support for its claim that "state trade wars [in cannabis] are already sprouting." Appellant's Br. 40.

cannabis licensing law that gives priority to individuals who were convicted, or who had family members who were convicted, of cannabis-related offenses under New York law. *Variscite NY Four*, 2024 WL 406490, at *4. The court expressly adopted the reasoning of *Brinkmeyer* and *Peridot Tree WA* in support of its conclusion that "Congress exercised its Commerce Clause power to pass the Controlled Substances Act and thereby prohibited a national market for cannabis." *Id.* at *12 (citations omitted). "Given that the national market for cannabis is illegal," the court continued, "it would make little sense to apply the dormant Commerce Clause to New York's cannabis licensing scheme." *Id.*

Ms. Jensen is incorrect to claim that the Seventh Circuit has stated that the dormant Commerce Clause applies to cannabis. Appellant's Br. 40-42. In *Finch v. Treto*, 82 F.4th 572 (7th Cir. 2023), the Seventh Circuit expressly declined to address whether the dormant Commerce Clause applies to Illinois' cannabis licensing laws, rejecting a "need for a detailed exploration of the state's cannabis-licensing regime or the merits of the plaintiffs' dormant Commerce Clause challenge." *Id.* at 577. Instead, it affirmed the denial of injunctive relief on the strength of the district court's balancing of harms. On that score, the Seventh Circuit stressed that the event that appellants sought to prevent (issuance of licenses) took place shortly after the district court denied the motion for a temporary restraining order. *Id.* at 578.

**D.** **Alternatively, the Challenged Criterion Does Not Violate the Dormant Commerce Clause Because It Places No Restriction on the Applicant's State of Residence.**

As explained above, the district court was correct to conclude that, because the interstate recreational cannabis market is illegal as a matter of federal law, the dormant Commerce Clause does not apply. But there is another, alternative reason why Ms. Jensen is unlikely to succeed on the merits: even if the dormant Commerce Clause applies to regulation of recreational cannabis, the Pell Grant criterion does not discriminate against interstate commerce because it is not a residency requirement. *See United States v. Dozier*, 848 F.3d 180, 188 (4th Cir. 2017) (citations omitted) (providing that the Court may affirm on any ground apparent from the record).[5]

Ms. Jensen's argument rests on the premise that the Pell Grant criterion is a residency requirement. *See* Appellant's Br. 16-17, 32-33, 35, 44-45, 51, 58, 61. Indeed, she disclaims any other basis for challenge, declaring that she "challenges only the unconstitutional favoritism of Maryland residents" in the licensing program. Appellant's Br. 44.

The premise for Ms. Jensen's argument, however, is incorrect. The Pell Grant criterion requires that an applicant have, "for at least 2 years, attended a 4-year

---

[5] The State made this argument below (ECF No. 25-1, at 14-15, 20-21), but the district court did not address it in its opinion.

institution of higher education in the State where at least 40% of the individuals who attend the institution of higher education are eligible for a Pell Grant."  Alc. Bev. § 36-101(ff)(1)(iii).  It does not require that the applicant be a Maryland resident. Thus, if Ms. Jensen had attended, for at least two years, a Maryland institution of higher education that satisfies the Pell Grant criterion, her status as a California resident would not have made her ineligible.    Conversely, a person who has not attended such an institution could not become eligible by becoming a Maryland resident.  Thus, it is illogical to argue that the Pell Grant criterion "favor[s] in-state residents over nonresidents," Appellant's Br. 7, and Ms. Jensen's dormant Commerce Clause argument founders on its premise.  For this reason, too, Ms. Jensen is unlikely to succeed on the merits.

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CONCLUDING THAT THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGHED AGAINST GRANTING A PRELIMINARY INJUNCTION.

When a plaintiff seeks preliminary injunctive relief against the government, the balance of the equities and public interest factors merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roe*, 947 F.3d at 230 (citing *Nken* in the context of a preliminary injunction).  The district court did not abuse its discretion in determining that the balance of equities and public interest favored denial of the preliminary injunction, based on Ms. Jensen's lack of urgency in challenging the relevant portion of the Act and the harms that would result from an injunction.  (J.A. 252-255.)

**A.    The District Court Did Not Abuse Its Discretion in Determining That Ms. Jensen's Delay in Bringing Suit Weighed Against Injunctive Relief.**

Although Ms. Jensen could have sued earlier, she did not do so until the application process had largely played out.  She learned about Maryland's application program from someone who read about it in an industry news source around the time that the social equity applicant verification period began.  (J.A. 209-210.)  And her counsel acknowledged at the hearing that Ms. Jensen most likely learned of the lottery in September 2023.  (J.A. 224.)  Information on the Pell Grant criterion thus was available to Ms. Jensen in September 2023.  She did not contact the Administration regarding the potential of a lawsuit until December 28, 2023 (J.A. 24), however—four months after becoming aware of the program.  She then waited until January 26, 2024, to file the lawsuit and until February 6, 2024, to file her motion for preliminary injunction.

Ms. Jensen's delay was inequitable, *see Variscite NY Four, LLC*, 2024 WL 406490, at *14, and the district court therefore did not abuse its discretion in weighing it against a grant of injunctive relief.  The unreasonableness of the delay is a function not of the number of days that she waited to file suit but, rather, of the fact that she waited until Maryland's cannabis licensing application process had neared its conclusion before acting.  *See Perry v. Judd*, 471 Fed. Appx. 219, 228 (4th Cir. 2012) (affirming that laches barred plaintiff's motion for a preliminary

injunction where plaintiff waited four months, and until five days after the applicable election deadline, to challenge Virginia's election law).  During that process, the State processed 1,708 applications of individuals applying for Maryland cannabis licenses. (J.A. 120.)  It dedicated hundreds of thousands of dollars and hundreds of staff hours to the process.  (J.A. 120.)  Thus, while Ms. Jensen argues that a months-long delay is "miniscule," Appellant's Br. 57, the application process itself was limited to a short period, and in this context, a months-long delay in suing inflicts substantial prejudice upon the State.  A person who invests nothing and sits on her rights while applicants and the Administration invest considerable time and resources should not be rewarded with a preliminary injunction that would halt the cannabis licensing process.  *See Finch*, 82 F.4th at 578 (affirming denial of injunctive relief because the district court reasonably concluded that plaintiffs did not satisfy the balance-of-equities requirement because restarting the application and lottery process would be an inappropriate exercise of equitable powers).

### B. Additional Considerations Underscore the Inappropriateness of Granting One Applicant an Injunction That Would Halt Licensing for Hundreds of Others.

For four additional reasons not noted in the district court's decision, the harm from the requested preliminary injunction required that the motion be denied.  First, Maryland voters overwhelmingly voted to (1) enshrine the right of an individual who is at least 21 years old to use and possess cannabis; and (2) command the State to

establish a regulated adult-use cannabis program. Md. Const. art. XX, § 1. These two elements of Question 4 were complementary: if Maryland is to legalize cannabis use and possession for adults, then it must create a safe, accessible, and equitable cannabis program. (ECF No. 25-1, at 3-4.) The Act's requirements for licensure are a central part of such a program, as the General Assembly intentionally created opportunities for communities disproportionately harmed by cannabis prohibition. (ECF No. 25-1, at 4-6.) Delaying licensure would frustrate that purpose and undermine the will of the voters.

Second, licensing new cannabis businesses is essential to provide adult-use consumers with safe cannabis that meets health and safety requirements and is subject to laboratory testing. (J.A. 197.) Adult possession and use now is legal in the State. Md. Const. art. XX. As a result, the longer it takes to license new businesses to meet this demand, the further entrenched the legacy market, which has no health or safety requirements, will become. (J.A. 314.) That outcome is contrary to the directive of Maryland voters to establish a safe regulatory program and, accordingly, contrary to the public interest.

Third, more than 1,700 applicants have already spent considerable time and money applying for cannabis licenses under the statutory criteria. (J.A. 304-305, J.A. 316.) Altering or undoing that process now would cause those applicants to

bear additional costs and uncertainties. That outcome is not in their interest or in the State's interest.

Fourth, the Administration expended considerable time and money to complete this licensing round, including contracting with Creative Services to verify applicants' eligibility. The Administration itself devoted additional resources to reviewing applications in the weeks after the application period ended. (J.A. 120.) In support of this work, the State incurred a cost of $650,000 and dedicated at least 250 staff hours. (J.A. 120.) These outlays are in addition to the work publicizing the licensing application process and criteria that the Administration performed in the months leading up to the application opening. (J.A. 117.) A grant of injunctive relief would have required much of this work to be redone.

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Joshua R. Chazen
JOSHUA R. CHAZEN
Assistant Attorney General
200 Saint Paul Place
20th Floor

Baltimore, Maryland 21202
jchazen@oag.state.md.us
(410) 576-7058
(410) 576-6995 (facsimile)

HEATHER B. NELSON
JAMES N. TANSEY
Assistant Attorneys General
300 West Preston Street
Suite 302
Baltimore, Maryland  21201
heather.nelson1@maryland.gov
jamie.tansey@maryland.gov
(410) 862-4692
(410) 333-7894 (facsimile)


Attorneys for Appellees

## REQUEST FOR ORAL ARGUMENT

The Appellees respectfully requests that the Court hear oral argument in this appeal. The Appellees submit that oral argument would aid the Court in its disposition of this appeal, in which this Court would address an issue pertaining to Maryland's Cannabis Reform Act for the first time.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,837 words, excluding the parts of the brief exempted by Rule 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Joshua R. Chazen
Joshua R. Chazen

# TEXT OF PERTINENT PROVISIONS

## 21 C.F.R. § 1308.11(d)

(d) Hallucinogenic substances. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation, which contains any quantity of the following hallucinogenic substances, or which contains any of its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation (for purposes of this paragraph only, the term "isomer" includes the optical, position and geometric isomers):

\* \* \*

(31)    Tetrahydrocannabinols…...………………………………………… 7370

> (i) Meaning tetrahydrocannabinols, except as in paragraph (d)(31)(ii) of this section, naturally contained in a plant of the genus Cannabis (cannabis plant), as well as synthetic equivalents of the substances contained in the cannabis plant, or in the resinous extractives of such plant, and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant, such as the following:
>
>> 1 cis or trans tetrahydrocannabinol, and their optical isomers
>> 6 cis or trans tetrahydrocannabinol, and their optical isomers
>> 3, 4 cis or trans tetrahydrocannabinol, and its optical isomers
>
> (Since nomenclature of these substances is not internationally standardized, compounds of these structures, regardless of numerical designation of atomic positions covered.)
>
> (ii) Tetrahydrocannabinols does not include any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. 1639o.

\* \* \*

(51)    Marihuana Extract…...………………………………………...…… 7350

Meaning an extract containing one or more cannabinoids that has been derived from any plant of the genus Cannabis, containing greater than 0.3% delta–9–tetrahydrocannabinol on a dry weight basis, other than the separated resin (whether crude or purified) obtained from the plant.

\*       \*       \*

## 21 U.S.C. § 801

The Congress makes the following findings and declarations:

(1) Many of the drugs included within this subchapter have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.

(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.

(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because--
(A) after manufacture, many controlled substances are transported in interstate commerce,
(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and
(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

(7) The United States is a party to the Single Convention on Narcotic Drugs, 1961, and other international conventions designed to establish effective control over international and domestic traffic in controlled substances.

## 28 U.S.C. § 1292(a)(1)

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court[.]

## 28 U.S.C. § 1331

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## 28 U.S.C. § 2201

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act, or section 351 of the Public Health Service Act.


## 42 U.S.C. § 1983

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.


## U.S. Const. art. 1 § 8, cl. 3

The Congress shall have Power . . . To regulate Commerce with Foreign Nations, and among the several States, and with the Indian Tribes[.]


## Md. Const. art. XX § 1

Cannabis

(a) Subject to subsection (b) of this section, on or after July 1, 2023, an individual in the State who is at least 21 years old may use and possess cannabis.

(b) The General Assembly shall, by law, provide for the use, distribution, possession, regulation, and taxation of cannabis within the State.

## COMAR 14.17.01.01(B)(45)

(45) "Social equity applicant" means an applicant for a cannabis license or cannabis registration that:

> (a) Has at least 65 percent ownership and control held by one or more individuals who:
> > (i) Have lived in a disproportionately impacted area for at least 5 of the 10 years immediately preceding the submission of the application;
> > (ii) Attended a public school in a disproportionately impacted area for at least 5 years; or
> > (iii) For at least 2 years, attended a 4-year institution of higher education in the State where at least 40 percent of the individuals who attend the institution of higher education are eligible for a Pell Grant; or
>
> (b) Meets any other criteria established by the Administration.


## Maryland Annotated Code
## Alcoholic Beverages & Cannabis Article (Alc. Bev.)

### § 1-309.1(d)

(d) The Office of Social Equity shall:

> (1) promote and encourage full participation in the regulated cannabis industry by people from communities that have previously been disproportionately impacted by the war on drugs in order to positively impact those communities;
> (2) consult with and assist the Comptroller in the administration of the Community Reinvestment and Repair Fund under § 1-322 of this subtitle;
> (3) consult with and assist the Department of Commerce in the administration of the Cannabis Business Assistance Fund under § 5-1901 of the Economic Development Article;
> (4) identify and oppose regulations that unnecessarily burden or undermine the legislative intent of the Office, including regulations that impose undue restrictions or financial requirements;
> (5) provide recommendations to the Maryland Cannabis Administration on regulations related to:
> (i) diversity; and

(ii) social equity applications;

(6) work with the Maryland Cannabis Administration to implement free technical assistance for social equity and minority cannabis business applicants;

(7) produce reports and recommendations on diversity and equity in ownership, management, and employment in the legal cannabis economy; and

(8) assist businesses with obtaining financing through the Capital Access Program under Title 36, Subtitle 14 of this article.

## § 1-322(a)

(a)(1) There is a Community Reinvestment and Repair Fund.

(2) The purpose of the Fund is to provide funds to community-based organizations that serve communities determined by the Office of Social Equity, in consultation with the Office of the Attorney General, to have been the most impacted by disproportionate enforcement of the cannabis prohibition before July 1, 2022.

\*      \*      \*

## § 36-101

(a) In this title the following words have the meanings indicated.

\*      \*      \*

(r) "Disproportionately impacted area" means a geographic area identified by the Office of Social Equity that has had above 150% of the State's 10-year average for cannabis possession charges.

\*      \*      \*

(ff) "Social equity applicant" means an applicant for a cannabis license or cannabis registration that:

(1) has at least 65% ownership and control held by one or more individuals who:

(i) have lived in a disproportionately impacted area for at least 5 of the 10 years immediately preceding the submission of the application;

(ii) attended a public school in a disproportionately impacted area for at least 5 years; or

(iii) for at least 2 years, attended a 4-year institution of higher education in the State where at least 40% of the individuals who attend the institution of higher education are eligible for a Pell Grant; or

(2) meets any other criteria established by the Administration.

\* \* \*

## § 36-401

(a)(1) A person must obtain a cannabis license issued by the Administration to operate a cannabis business.

(2) A cannabis license issued under this subtitle:

(i) authorizes the holder of the license to operate a medical and adult-use cannabis business;

(ii) is valid for 5 years on initial licensure and 5 years on renewal; and

(iii) may be transferred only in accordance with Subtitle 5 of this title.

\* \* \*

(c)(1) A standard license authorizes the holder of the license:

(i) for growers, to operate more than 10,000 square feet, but not more than 300,000 square feet, of indoor canopy or its equivalent, as calculated by the Administration;

(ii) for processors, to process more than 2,000 pounds of cannabis per year, as calculated by the Administration; and

(iii) for dispensaries, to operate a store at a physical location that sells cannabis or cannabis products.

\* \* \*

## § 36-404

Issuing of licenses

(a)(1) On or before January 1, 2024, the Administration shall begin issuing first round licenses in accordance with subsection (d) of this section.

(2) On or after May 1, 2024, the Administration shall begin issuing second round licenses in accordance with subsection (e) or (f) of this section.

(3) Subject to paragraphs (1) and (2) of this subsection, the Administration may issue licenses in accordance with subsection (g) of this section.

## Duties and powers of the administration

(b)(1) The Administration shall:

(i) conduct extensive outreach to small, minority, and women business owners and entrepreneurs who may have an interest in applying for a cannabis license before accepting and processing cannabis license applications;

(ii) connect potential social equity applicants with the Office of Social Equity;

(iii) accept and process applications for licenses:

1. in response to a request for applications issued under this section;

2. for a period of 30 calendar days; and

3. beginning on a date that is at least 60 calendar days after the date on which the Administration issued the request for applications;

(iv) award cannabis licenses in at least two separate rounds in accordance with this section; and

(v) reserve a reasonable number of licenses to allow micro licenses to transition to standard licenses, as determined in regulations by the Administration.

(2) The Administration may suspend, fine, restrict, or revoke a cannabis license if it is determined that a cannabis licensee has not complied with statements in the application, including statements about standards of operation or employment practices related to diversity, equity, and inclusion.

(3) The Administration may not:

(i) accept more than one application per license type from an applicant in any round;

(ii) accept more than two applications from an applicant in any round;

(iii) require that an applicant possess or own a property or facility to operate a cannabis business at the time of application;

(iv) regardless of the number of license awards authorized in each round, award more licenses than the total number of licenses authorized under § 36-401(d) of this subtitle; or

(v) conduct a market demand study before the first round licenses are issued.

(4) The Administration may adopt regulations concerning the equity and fairness of the pool of applicants throughout the application process.

## Application for license

(c) To be licensed, an applicant shall submit to the Administration:

(1) an application fee in accordance with § 36-403 of this subtitle; and

(2) an application developed by the Administration under this title.

(d)(1) For the first round, subject to paragraphs (2) and (3) of this subsection, the Administration shall enter each social equity applicant that meets the minimum qualifications established by the Administration into a lottery and issue to social equity applicants not more than:

    (i) for standard licenses:

        1. 20 grower licenses;

        2. 40 processor licenses; and

        3. 80 dispensary licenses;

    (ii) for micro licenses:

        1. 30 grower licenses;

        2. 30 processor licenses; and

        3. 10 dispensary licenses; and

    (iii) 10 incubator space licenses.

(2) The Administration shall determine whether an application meets the minimum qualifications for the lottery on a pass-fail basis, as determined by the Administration, after evaluating:

    (i) a detailed operational plan for the safe, secure, and effective cultivation, manufacture, or dispensing of cannabis;

    (ii) a business plan demonstrating a likelihood of success and sufficient business ability and experience on the part of the applicant, and providing for appropriate employee working conditions; and

    (iii) a detailed diversity plan.

(3)

    (i) If an applicant seeking social equity status is from out of state, the applicant must submit with the application evidence that the applicant meets the criteria for a social equity applicant established under this title before the Administration may consider the application.

    (ii) First round application submissions for all license types are limited to social equity applicants.

(4)

    (i) On or before January 1, 2024, the Administration shall submit an interim report to the General Assembly, in accordance with § 2-1257 of the State Government Article, on the ability of micro dispensary licensees to safely and securely dispense cannabis.

    (ii) On or before December 31, 2024, the Administration shall submit a final report to the General Assembly, in accordance with § 2-1257 of the State

Government Article, on the ability of micro dispensary licensees to safely and securely dispense cannabis.

Second round of licenses

(e) For the second round of licensing, the Administration shall issue licenses in accordance with subsection (f) or (g) of this section.

Strong basis in evidence of discrimination of women and
minority-owned businesses

(f)(1) Subject to paragraph (2) of this subsection, if the Administration, in consultation with the certification agency designated by the Board of Public Works under § 14-303(b) of the State Finance and Procurement Article, the Governor's Office of Small, Minority, and Women Business Affairs, the General Assembly, and the Office of the Attorney General, determines that a disparity study demonstrates a strong basis in evidence of business discrimination against firms owned by minorities and women in the Maryland cannabis market, the Administration shall issue a second round of licenses, applying minimum licensing qualifications and employing remedial measures consistent with constitutional requirements, for not more than:

    (i) for standard licenses:

        1. 25 grower licenses;

        2. 25 processor licenses; and

        3. 120 dispensary licenses;

    (ii) for micro licenses:

        1. 70 grower licenses; and

        2. 70 processor licenses;

    (iii) 10 incubator space licenses; and

    (iv) 15 on-site consumption licenses.

(2) If the Administration, in consultation with the certification agency designated by the Board of Public Works under § 14-303(b) of the State Finance and Procurement Article, the Governor's Office of Small, Minority, and Women Business Affairs, the General Assembly, and the Office of the Attorney General, determines that a lottery system employing remedial measures established in accordance with a disparity study can be conducted consistent with constitutional requirements, the Administration shall award licenses under paragraph (1) of this subsection through a lottery process that employs remedial measures.

## No strong basis in evidence of discrimination of women and minority-owned businesses

(g)(1) Subject to paragraphs (2) and (3) of this subsection, if the Administration, in consultation with the certification agency designated by the Board of Public Works under § 14-303(b) of the State Finance and Procurement Article, the Governor's Office of Small, Minority, and Women Business Affairs, the General Assembly, and the Office of the Attorney General, determines that a disparity study does not demonstrate a strong basis in evidence of business discrimination against firms owned by minorities and women in the Maryland cannabis market, the Administration shall enter each applicant that meets the minimum qualifications established by the Administration into a lottery and issue to the applicants not more than:

    (i) for standard licenses:

        1. 25 grower licenses;

        2. 25 processor licenses; and

        3. 120 dispensary licenses;

    (ii) for micro licenses:

        1. 70 grower licenses; and

        2. 70 processor licenses;

    (iii) 10 incubator space licenses; and

    (iv) 15 on-site consumption licenses.

(2) The Administration shall determine whether an application meets the minimum qualifications for a lottery based on a pass-fail basis, as determined by the Administration, after evaluating:

    (i) a detailed operational plan for the safe, secure, and effective cultivation, manufacture, or dispensing of cannabis;

    (ii) a business plan demonstrating a likelihood of success and sufficient business ability and experience on the part of the applicant, and providing for appropriate employee working conditions; and

    (iii) a detailed diversity plan.

(3) Application submissions for micro licenses under this subsection are limited to social equity applicants.

## Subsequent rounds

(h)(1) For cannabis license awards subsequent to the round specified under subsection (f) or (g) of this section, the Administration shall award licenses in accordance with this subsection.

(2) The Administration shall award licenses as needed in accordance with a market demand study.

(3) The Administration may:

(i) limit some or all of the licenses issued under this paragraph to social equity applicants; and

(ii) employ remedial measures, consistent with constitutional requirements, if the Administration, in consultation with the certification agency designated by the Board of Public Works under § 14-303(b) of the State Finance and Procurement Article, the Governor's Office of Small, Minority, and Women Business Affairs, the General Assembly, and the Office of the Attorney General, determines that a disparity study demonstrates a strong basis in evidence of business discrimination against firms owned by minorities and women in the Maryland cannabis market.

Compliance with the State's Minority Business Enterprise Program

(i)(1) To the extent practicable and authorized by the U.S. Constitution, a cannabis licensee shall comply with the State's Minority Business Enterprise Program.

(2) The Administration, in consultation with the certification agency designated by the Board of Public Works under § 14-303(b) of the State Finance and Procurement Article, the Governor's Office of Small, Minority, and Women Business Affairs, the General Assembly, and the Office of the Attorney General, shall review the disparity study required by Chapter 26 of the Acts of 2022 to evaluate whether application of the State's Minority Business Enterprise Program to cannabis licenses would comply with the City of Richmond v. J.A. Croson Co., 488 U.S. 469, and any subsequent federal or constitutional requirements.

(3) On or before 6 months after the issuance of a cannabis license under § 36-401 of this subtitle, the Governor's Office of Small, Minority, and Women Business Affairs, in consultation with the Office of the Attorney General and the Office of Social Equity within the Administration and the cannabis licensee, shall establish a clear plan for setting reasonable and appropriate minority business enterprise participation goals and procedures for the procurement of goods and services related to cannabis, including the cultivation, manufacturing, and dispensing of cannabis.

(4) To the extent practicable, the goals and procedures specified in paragraph (3) of this subsection shall be based on the requirements of Title 14, Subtitle 3 of the State Finance and Procurement Article and the regulations implementing that subtitle.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| | * | |
| JUSTYNA JENSEN, | | |
| | * | |
| *Plaintiff-Appellant*, | | |
| v. | * | No. 24-1216 |
| | | |
| MARYLAND CANNABIS | * | |
| ADMINISTRATION AND | | |
| WILLIAM TILBURG, | * | |
| | | |
| *Defendants-Appellees*. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## CERTIFICATE OF SERVICE

I certify that, on this 13th day of June, 2024, the Brief of Appellees was filed electronically and served on counsel of record who are registered CM/ECF users.

/s/ Joshua R. Chazen
Joshua R. Chazen